UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA M.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW S. SAUL,<br><br>　　　　　Defendant. | Case No. 19-cv-03134-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 20 |

　　　　Plaintiff Donna M. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff no longer disabled due to medical improvement and therefore terminated her disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 19.] The Commissioner cross-moves to affirm. [Docket No. 20.] For the reasons stated below, the court grants Plaintiff's motion in part and denies the Commissioner's motion.

**I.　　PROCEDURAL HISTORY**

　　　　On February 27, 2005, the Social Security Administration ("SSA") found that Plaintiff was disabled beginning on January 1, 2003. The date of that decision is known as the "comparison point decision" or CPD. Administrative Record ("A.R.") 496-99. At the time of the CPD, Plaintiff had an anxiety disorder that met listing 12.06 in 20 C.F.R. Subpart P, Appendix 1. A.R. 37.

　　　　On July 17, 2013, the Social Security Administration ("SSA") found Plaintiff was no longer disabled as of July 1, 2013. A.R. 312-15. The determination was upheld on reconsideration following a December 2013 hearing before a disability hearing officer. A.R. 316-41.

　　　　An Administrative Law Judge ("ALJ") held a hearing in December 2015 and issued an

unfavorable decision on January 22, 2016, finding that Plaintiff's condition had improved and that she was no longer disabled as of July 17, 2013. A.R. 289-307. The Appeals Council reversed and remanded the matter, finding that the ALJ should have considered whether Plaintiff became disabled again at any time between July 17, 2013 and March 31, 2016, her "last insured" date. A.R. 308-10. The Appeals Council also found that the ALJ erred in giving "significant weight" to the disability hearing officer's decision, which was not a medical opinion. A.R. 309.

The ALJ postponed a second hearing scheduled for October 11, 2017, and held a third hearing on January 29, 2018, at which a medical expert testified. A.R. 251-82. The ALJ issued a second unfavorable decision on March 12, 2018. A.R. 32-55. Following the eight-step analysis that governs continuing disability reviews, the ALJ determined that since July 17, 2013, Plaintiff had depressive disorder, NOS and an anxiety disorder, NOS, which were both severe impairments. A.R. 37, 39. The ALJ found that Plaintiff's CPD impairment of anxiety no longer met or medically equaled listing 12.06, and that starting on July 17, 2013, Plaintiff "has had the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels involving simple, routine tasks with no public interaction." A.R. 39. Relying on the opinion of a vocational expert ("VE") who testified that Plaintiff's nonexertional limitations "had little or no effect on the occupational base of unskilled work at all exertional levels," the ALJ found that a finding of "not disabled" was appropriate. A.R. 45. The ALJ concluded that Plaintiff's disability ended on July 17, 2013, and that she had not become disabled again since that date. A.R. 45.

After the Appeals Council denied review, Plaintiff sought review in this court. [Docket No. 1.] The parties both move for summary judgment.

## II.   THE CONTINUING DISABILITY REVIEW PROCESS

An individual is disabled for the purpose of receiving benefits under the Act if she demonstrates a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity that is expected to result in death or last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful

2

employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). To determine whether a claimant is disabled, an ALJ engages in a five-step sequential analysis as required under 20 C.F.R. § 404.1520(a)(4)(i)-(v).

After a person is found to be entitled to disability benefits, the Commissioner is required to periodically review whether continued entitlement to such benefits is warranted. 42 U.S.C. § 421(i); 20 C.F.R. §§ 404.1589-1590. The SSA may only terminate benefits to an existing beneficiary if substantial evidence demonstrates that 1) there has been medical improvement in the individual's impairment and 2) he or she is now able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f)(1); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1460 (9th. Cir. 1995) ("Disability benefits cease when the period of disability ends due to medical improvement (or for other reasons) and the individual is again able to do substantial work." (citations omitted)). ALJs make this determination by following an eight-step regulatory framework, which asks:

1. Is the claimant "engaging in substantial gainful activity"?

2. Does the claimant's impairment or combination of impairments meet any of the listings in 20 C.F.R. 404 Subpart P, Appendix 1?

3. Has medical improvement occurred?

4. If medical improvement has occurred, is the medical improvement related to the claimant's ability to work?

5. If there has been no medical improvement, do any of the exceptions to medical improvement apply?

6. Are all of the claimant's current impairments in combination severe?

7. What is the claimant's residual functional capacity based on the current impairments, and can the claimant still perform past relevant work?

8. If the claimant cannot perform past relevant work, can he or she perform other work given his or her residual functional capacity?

20 C.F.R. § 404.1594(f)(1)–(8).

### III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the

Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV.   ISSUES FOR REVIEW

Plaintiff argues that the ALJ's determination of her RFC and determination that medical improvement occurred are not supported by substantial evidence because the ALJ erred in weighing the medical evidence; assessing her credibility; and rejecting lay witness testimony. The Commissioner argues that the ALJ's decision is free of error.

## V.   DISCUSSION

Plaintiff first argues that the ALJ erred with respect to the medical opinions of Elizabeth A. Whelchel, Ph.D., Steven Sutherland, Ph.D., and Joanne Markle, M.D., and that these errors impacted the ALJ's assessment of her RFC as well as the determination that medical improvement occurred.

### A.   Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the

doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the

record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

### B. Analysis

#### 1. Dr. Whelchel

Dr. Whelchel performed a comprehensive psychiatric evaluation of Plaintiff on June 17, 2013. A.R. 1187-93. Dr. Whelchel interviewed Plaintiff, who appeared to be a reliable historian, reviewed two records, and performed a mental status examination. Dr. Whelchel diagnosed Plaintiff with post-traumatic stress disorder (PTSD), bipolar affective disorder II, panic disorder without agoraphobia, and personality disorder NOS. A.R. 1191. Dr. Whelchel wrote that Plaintiff's psychiatric condition could be expected to improve with active psychotherapy and medication management. A.R. 1191.

Based on her examination of Plaintiff, Dr. Whelchel opined that Plaintiff is able to understand, remember, carry out simple one or two step job instructions and is also able to "do detailed and complex instructions." She is moderately impaired in the ability to relate and interact with coworkers and the public; maintain concentration and attention, persistence, and pace; associate with day-to-day work activity; maintain regular attendance in the workplace and perform work activities on a consistent basis; and perform work activities without special or additional supervision. Plaintiff is only mildly impaired in the ability to accept instructions from supervisors. A.R. 1192.

The ALJ stated that he accorded "significant weight" to Dr. Whelchel's opinion because it was based on her personal observation and extensive evaluation of Plaintiff and because it occurred around the time of the proposed cessation of disability (July 1, 2013). A.R. 41.

As set forth above, the ALJ assessed Plaintiff with an RFC to perform "a full range of work at all exertional levels involving simple, routine tasks with no public interaction." A.R. 39.

Plaintiff argues that the ALJ's RFC finding is not based on substantial evidence because it does not accurately capture all of the limitations Dr. Whelchel assessed.

In determining a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence" in the record, 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), and must consider all of the claimant's "medically determinable impairments," including those that are not severe. 20 C.F.R. § 404.1545(a)(2); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Similarly, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.'" *Id*. (citing *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988)).

Here, the limitation to "simple, routine tasks with no public interaction" adequately captures Plaintiff's moderate limitations in concentration, attention, persistence, or pace, as assessed by Dr. Whelchel. *See Sabin v. Astrue*, 337 Fed. Appx. 617, 621 (9th Cir. 2009) (finding ALJ properly assessed medical evidence in determining that despite moderate difficulties as to concentration, persistence or pace, claimant could perform simple and repetitive tasks on consistent basis). It also captures Plaintiff's limitations in interacting with the public, as it restricts her to jobs with no public interaction. However, the RFC does not address the other moderate limitations Dr. Whelchel assessed, such as Plaintiff's ability to relate to and interact with coworkers, associate with day-to-day work activity, maintain regular attendance in the workplace and perform work activities on a consistent basis, and perform work activities without special or additional supervision. A.R. 1192. *See, e.g., Morinskey v. Astrue*, 458 F. App'x 640, 641 (9th Cir. 2011) (ALJ erred by failing to address physician's opinion that the claimant was moderately impaired in the ability to maintain regular attendance, sustain an ordinary routine, and complete a normal work day or workweek without interruption from bi-polar disorder; ALJ's restriction to "low stress" jobs did not encompass said limitations); *Raymond v. Berryhill*, No. 5:17-CV-01112-SHK, 2018 WL 3691842, at *6 (C.D. Cal. Aug. 2, 2018) (restriction to unskilled work did not sufficiently account for "moderate limitations in performing routine work duties and maintaining consistent attendance in the workplace"); *Wiles v. Berryhill*, No. 2:16-cv-09558-GJS, 2017 WL

1    5186333, at *3 (C.D. Cal. Nov. 8, 2017) (limitation to "simple routine tasks with limited public

2    contact" did not account for moderate limitations "accepting instructions from supervisors and

3    interacting with coworkers; performing work activities consistently without special instructions;

4    maintaining regular attendance and completing a normal workday without interruption").

5    Accordingly, the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence.

6        Importantly, Dr. Whelchel's opinion was consistent with the other medical opinions in the

7    record regarding Plaintiff's limitations.  For example, medical expert Dr. Sutherland testified at

8    the December 2015 hearing that Plaintiff is moderately limited in her ability to perform activities

9    within a schedule, maintain regular attendance, and be punctual within customary tolerances.  He

10   also opined that she is moderately limited in her ability to complete a normal workday and

11   workweek without interruptions from psychologically based symptoms, perform at a consistent

12   pace without an unreasonable number of lengthy rest periods, and respond appropriately to

13   changes in a work setting.  A.R. 205-06.  The ALJ accorded "great weight" to Dr. Sutherland's

14   opinion.  A.R. 41.  The ALJ also accorded "significant weight" to the opinions of the state agency

15   medical consultants, who each opined that Plaintiff is moderately impaired in the ability to

16   complete a normal workday or workweek, get along with coworkers or peers without distracting

17   them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting.

18   A.R. 41, 1351-52, 1406.

19       The ALJ's RFC assessment also impacted his conclusion that Plaintiff could perform other

20   jobs in the national economy given her RFC.  The ALJ posed the following hypothetical to the

21   VE: "assume the capacity for work at all exertional levels but limited to no public interaction and

22   simple, routine tasks" by a "younger individual."  A.R. 277.  The VE testified, and the ALJ found,

23   that such limitations would not result in a significant erosion of the unskilled work base, and that

24   the majority of unskilled jobs would still be available to such an individual.  A.R. 277, 44-45.

25   This hypothetical ignored the opinions by Dr. Whelchel, Dr. Sutherland, and the state agency

26   medical consultants that Plaintiff would be moderately limited in her ability to complete a normal

27   workday or workweek and the other limitations described above, which the ALJ accepted.  "The

28   hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all*

the limitations and restrictions of the particular claimant.'" *Valentine*, 574 F.3d at 690 (citation omitted). When a "hypothetical posed by the ALJ to the vocational expert d[oes] not reflect all of [plaintiff's] limitations, the expert's opinion has no evidentiary value and cannot support the ALJ's decision." *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). Therefore, the ALJ's determination, based on a flawed hypothetical posed to the VE, is not supported by substantial evidence.

Finally, to the extent that the ALJ did not include all of the limitations Dr. Whelchel assessed in the RFC because he rejected those portions of Dr. Whelchel's opinion, he erred, because he failed to set forth any reasons for doing so. *See Lester*, 81 F.3d at 830-31 (an ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount an examining physician's opinion).

### 2. Dr. Sutherland

Dr. Sutherland testified as a medical expert at the December 2015 hearing. A.R. 201-220. He reviewed the record and noted Plaintiff's diagnosis of anxiety disorder and possible diagnoses of PTSD, panic disorder, and mood disorder, as well as an isolated reference to personality disorder not otherwise specified. A.R. 201-03. He noted Dr. Whelchel's January 2013 evaluation, including her assessment of Plaintiff's functional limitations, and initially opined that Plaintiff "doesn't seem to meet or equal a listing . . . based on what [he's] seen in this record . . . as of . . . September, of 2013." A.R. 203-04.

As to her functional limitations, Dr. Sutherland stated at the beginning of his testimony that Plaintiff is moderately limited in her ability to understand and carry out complex tasks, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. He also opined that she is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number of lengthy rest periods, function with the general public and coworkers, and respond appropriately to changes in a work setting. According to Dr. Sutherland, Plaintiff has only mild limitations in her activities of daily living. A.R. 205-06.

On questioning by Plaintiff's counsel, Dr. Sutherland stated that it was "very possible" that limitations in Plaintiff's social functioning are "moderate to marked," particularly when she is under stress. A.R. 209. Dr. Sutherland then listened to Plaintiff testify about her problems with relationships, belief that therapy has not helped her, difficulties with concentration and completing tasks, lack of hope for the future, insomnia, and anxiety. A.R. 210, 213-18. Following her testimony, Dr. Sutherland revised his opinion of Plaintiff's functional limitations, stating that she is "marked[ly]" limited in social functioning and indicating that Plaintiff's medical records do not accurately reflect her functioning:

> And the—the records don't reflect the intensity I hear in her voice and the anger and the hurt. And it appears that she—as I listen to her today, that she has real difficulty holding on, and I really would guess that she would have difficulty maintaining work, maintaining a job at this point, based on what I've heard today. . . .that's my professional opinion at this point.

A.R. 218-19. He then concluded that "if we're giving her the benefit of the doubt," she meets a listing. A.R. 219. Upon further questioning, Dr. Sutherland stated his opinion that if Plaintiff secured employment, she could be absent from work two or three times per month or a certain number of days per month and "could have episodes of being really angry at people and losing work." A.R. 220.

The ALJ did not discuss Dr. Sutherland's opinion at length, but stated he accorded it "great weight" because Dr. Sutherland was able to review the entire medical record and consider Plaintiff's testimony; cited specific findings to explain his opinion; and possesses "extensive education and experience" in his field. A.R. 41. However, in a footnote, the ALJ noted that while "Dr. Sutherland had appeared willing to tilt the scale in the claimant's favor based on her testimony and presentation at the hearing, he conceded that the objective record is at odds with that presentation and testimony," and stated that he rejected the portion of Dr. Sutherland's opinion "that [Plaintiff] may be more severely impaired based on what [Dr. Sutherland] perceived that day." According to the ALJ, Dr. Sutherland's opinion was "based on a very limited, isolated perception based on hearing testimony telephonically, and it is not supported by the objective evidence of record, as discussed herein." A.R. 41 n.2.

Plaintiff argues that the ALJ erred with respect to Dr. Sutherland's opinion in two ways. First, she argues that the ALJ did not account for the moderate limitations Dr. Sutherland assessed in his determination of Plaintiff's RFC. For the same reasons discussed above with respect to Dr. Whelchel's opinion, the court agrees. The ALJ's RFC determination did not properly account for Plaintiff's moderate limitations in her ability to perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number of lengthy rest periods; and respond appropriately to changes in a work setting, even though he accorded this portion of Dr. Sutherland's opinion "great weight." *See* A.R. 205-06. This error also negatively impacted the hypothetical the ALJ posed to the VE for the reasons discussed above.

Next, Plaintiff argues that the ALJ erred in rejecting Dr. Sutherland's opinion that Plaintiff is markedly impaired in social functioning, "would have difficulty maintaining work," and could be absent from work two or three times per month and "have episodes of being really angry at people and losing work," opinions he offered after hearing Plaintiff's testimony. Plaintiff contends that if the ALJ had accepted this portion of Dr. Sutherland's opinion, he would have concluded that Plaintiff did not experience medical improvement and has remained disabled since July 17, 2013. Pl.'s Mot. 7. According to Plaintiff, the ALJ did not provide legally sufficient reasons to reject this opinion.

In response, the Commissioner does not address this specific argument. He asserts only that the ALJ gave valid reasons for according Dr. Sutherland's opinion "great weight," and notes the ALJ's statement that "the overall record does not support the intensity of symptoms claimed at the hearing." Def.'s Mot. 5-6 (citing A.R. 40-41). The Commissioner does not actually discuss the reasons the ALJ gave for discounting portions of Dr. Sutherland's opinion or address the sufficiency thereof. *See id*.

Dr. Sutherland did not examine Plaintiff. Instead, he reviewed the record and listened to a portion of her testimony at the hearing. Therefore, as a non-examining physician, the ALJ could only reject his opinion "by reference to specific evidence in the medical record." *Sousa*, 143 F.3d

11

at 1244. Here, the ALJ stated only that Dr. Sutherland's "suggest[ion] that [Plaintiff] may be more severely impaired" is "based on a very limited, isolated perception" and "is not supported by the objective evidence of record, as discussed herein." A.R. 41 n.2.[1] As Plaintiff correctly points out, and the Commissioner does not dispute, the ALJ did not actually identify a specific aspect of the medical evidence which contradicts the limitations described by Dr. Sutherland. Therefore, the ALJ did not satisfy the standard articulated by the Ninth Circuit in *Sousa* for rejecting that portion of Dr. Sutherland's opinion.

The ALJ's error with respect to Dr. Sutherland's opinion about Plaintiff's social functioning likely impacted other areas of the ALJ's decision. First, the ALJ concluded that medical improvement occurred based on Plaintiff's symptoms "improv[ing] to mild to moderate levels," which in turn was based on the medical opinion evidence, including Dr. Sutherland's opinion. *See* A.R. 39, 40-43.

Second, the ALJ's error regarding Dr. Sutherland's opinion may have affected his evaluation of Dr. Markle's opinion. Dr. Markle, who is Plaintiff's treating psychiatrist, opined that Plaintiff has marked limitations in the ability to get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes, and is markedly impaired in the ability to accept instructions and respond appropriately to criticism from supervisors, among other marked and moderate limitations. A.R. 2034-37. The ALJ accorded no weight to Dr. Markle's opinion for several reasons, including "because it is inconsistent with the longitudinal record," A.R. 42, and elsewhere in his opinion the ALJ stated that Dr. Markle's opinion was "entirely unsupported." A.R. 44. However, Dr. Markle's opinions about Plaintiff's social functioning are consistent with Dr. Sutherland's improperly-rejected opinions on that subject. Accordingly, on remand, the ALJ shall re-evaluate Dr. Markle's opinions in light of this consistency with other medical opinion evidence.

The ALJ's errors in evaluating the medical opinion evidence are sufficient to grant

---

[1] The court also notes that the ALJ's characterization of this portion of Dr. Sutherland's opinion as merely a "suggestion" is not supported by Dr. Sutherland's testimony that he was "mov[ing] [his] rating . . . up to marked on the social functioning." A.R. 218.

1  Plaintiff's motion for summary judgment. Accordingly, the court need not address Plaintiff's
2  remaining claims of error.

**VI.   CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part. This matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: November 2, 2020



IT IS SO ORDERED
Donna M. Ryu
United States Magistrate Judge
Judge Donna M. Ryu